IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN ALFARO, and<br>GEORGANA SZISZAK<br><br>    Plaintiffs,<br><br>v.<br><br>MICHAEL REMPUSHESKI,<br><br>    Defendants. | Case No. 21-cv-2271<br><br>COMPLAINT AND<br>JURY DEMAND |

1. Plaintiffs Kevin Alfaro and Georgana Sziszak bring this suit to vindicate their First Amendment rights and to challenge the abuse of police authority to suppress free speech.

2. On June 26, 2020, during a summer in which millions across the country marched for reforms to the criminal justice system, Mr. Alfaro posted a picture of an on-duty Nutley, New Jersey, police officer on Twitter to ask if anyone could identify him. Mr. Alfaro hoped to use the answer (if he received one) to complain about the officer's conduct: earlier that same day, the officer had concealed his badge at a protest calling for changes in police practices and had failed to intervene when counter-protesters verbally threatened Mr. Alfaro. Ms. Sziszak, a friend of Mr. Alfaro, "retweeted" Mr. Alfaro's tweet. Neither Mr. Alfaro nor Ms. Sziszak received a response.

3. Nearly a month later, Defendant Michael Rempusheski, a detective in the Nutley Police Department (NPD) and a coworker of the

1

officer pictured issued a criminal summons to Mr. Alfaro, Ms. Sziszak, and three others who retweeted Mr. Alfaro's tweet, charging them with cyber harassment, a felony punishable by up to 18 months in state prison. The criminal summons and accompanying affidavits of probable cause identified the tweets about the officer, identified as Detective PJ Sandomenico, as the basis for the charges.

4. The tweets at issue, however, do not begin to establish probable cause for the crimes charged. Cyber harassment under New Jersey law requires the use of "lewd, indecent, or obscene" material—terms that refer to prurient sexual materials—and intent to cause, or place a reasonable person in fear of, harm. Mr. Alfaro's tweet stated, in full, "If anyone knows who this bitch is throw his info under this tweet." There is nothing "lewd, indecent, or obscene" about that, nor was there any basis to believe that Mr. Alfaro or Ms. Sziszak intended to harm Detective Sandomenico.

5. Reflecting the baselessness of the charges, an assistant district attorney dismissed them just over two weeks later rather than seek an indictment. Local and national press outlets also covered the retaliatory charges against Mr. Alfaro and Ms. Sziszak.[1]

---

[1] *See, e.g.*, Jacyln Pieser, Washington Post, *A protester tried to ID a police officer on Twitter. Now he faces a felony — along with four who retweeted him*, Aug. 7, 2020, *available at* https://perma.cc/3C7F-CY9K; Mike Davis, Asbury Park Press,

6. In the meantime, however, Defendant Rempusheski's abuse of authority had its intended effect on Mr. Alfaro and Ms. Sziszak, who had no prior criminal records. Mr. Alfaro experienced anxiety, sleeplessness, and distress from fear of spending time in jail, being labeled a criminal, and the stress of arranging a criminal defense. The persistence of these injuries has caused him to seek professional help. Ms. Sziszak likewise endured anxiety and sleeplessness, experienced complications with her diabetes, and had to miss work due to the distress of facing a felony charge. And as with Mr. Alfaro, the anxiety, shame, and distress plague her to this day.

7. Defendant Rempusheski's actions also chilled Mr. Alfaro's and Ms. Sziszak's speech. They both made their social media accounts private and cut back on their online activity out of fear of additional retaliation. And Mr. Alfaro, who lives near Nutley, stopped attending protests and rallies for fear he would be recognized and harassed, or worse.

8. Accordingly, Mr. Alfaro and Ms. Sziszak bring this suit against Defendant Rempusheski pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act to recover damages for their injuries.

---

*Cyber harassment charges dismissed against tweeters, retweeters of Nutley cop photo*, Aug. 8, 2020, *available at* https://perma.cc/LZL2-VVLW.

## PARTIES

9. Plaintiff Kevin Alfaro is a 22-year-old resident of Essex County, New Jersey.

10. Plaintiff Georgana Sziszak is 20-year-old resident of Queens County, New York.

11. Defendant Michael Rempusheski is a detective in Nutley, New Jersey, and one of 12 officers in the NPD's investigation unit, of which Detective Sandomenico is also a part.

## JURISDICTION

12. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

13. Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTS

**I. Mr. Alfaro tweets, and Ms. Sziszak retweets, a post asking for help identifying an officer that Mr. Alfaro believed behaved inappropriately**

14. On June 26, 2020, Mr. Alfaro joined a march and rally in Nutley, New Jersey, that was organized to protest inequality and injustices in policing practices.

15. By the time Mr. Alfaro arrived, the march had stopped in front of the Nutley Town Hall, where counter-protesters were also present.

16. Throughout the rally, Mr. Alfaro and other protesters were the subject of numerous taunts and verbal threats from counter-protesters. This

included two counter-protesters shouting at Mr. Alfaro that they were going to "F[---] you up."

17. Although no violence erupted, Mr. Alfaro was nonetheless frustrated that the nearest police officer, who turned out to be Detective Sandomenico, failed to take any action to address the threats of physical violence. Instead, he appeared to be befriending those who threatened Mr. Alfaro. Mr. Alfaro was also upset that Officer Sandomenico covered his badge so that neither Mr. Alfaro nor anyone else could identify him. Mr. Alfaro took a picture of the officer to document what he viewed as an injustice.

18. When he returned home that night, Mr. Alfaro went on Twitter to ask whether anyone knew the identity of the officer. He posted the picture with the caption: "If anyone knows who this bitch is throw his info under this tweet."[2]

19. Mr. Alfaro's Twitter page was devoid of anything to suggest that the post was intended to cause harm to or instill fear in Detective Sandomenico. The tweet itself contained no threat, and none of Mr. Alfaro's Twitter followers were officers in the NPD. To this day, Mr. Alfaro does not know how the post eventually reached Detective Sandomenico or Defendant

---

[2] To put information "under a tweet" means to respond to the tweet. The response will then appear below the original tweet.

Rempusheski.  Moreover, no surrounding posts included any threats to the police.

20. Five people retweeted Mr. Alfaro's post.

21. One of those was Ms. Sziszak, a friend of Mr. Alfaro's.  Ms. Sziszak did not add any additional commentary when she retweeted Mr. Alfaro's post.

22. Like Mr. Alfaro, Ms. Sziszak had no followers who were in the NPD and does not know how NPD eventually learned of her retweet.

23. There was nothing on Ms. Sziszak's Twitter page that could support an inference that she meant to cause harm to or instill fear in Detective Sandomenico by simply retweeting a message.  Her tweets on June 26 and the days before and after contained a mix of messages about women's rights, politics, family, her daily activities, personal relationships, and pop culture.

24. In fact, the only other tweet that she posted bearing any connection at all to the rally was in response to pictures of a similar rally held the next day in Nutley.  The pictures showed one counter-protester raising the middle finger and another extending his arm in the "Heil Hitler" gesture.  Ms. Sziszak responded that it was "gross."

25. Neither Mr. Alfaro nor Ms. Sziszak ever received any identifying information about Detective Sandomenico in response to their tweets.  And

neither Mr. Alfaro nor Ms. Sziszak posted another tweet to attempt to identify, or otherwise comment on, Detective Sandomenico.

### II. Defendant Rempusheski charges Mr. Alfaro and Ms. Sziszak with cyber harassment

26. Weeks later, on July 20, 2020, Defendant Rempusheski issued criminal summons charging Mr. Alfaro and Ms. Sziszak with cyber harassment.

27. The cyber harassment statute, in relevant part, provides:

> A person commits the crime of cyber-harassment if, while making a communication in an online capacity via any electronic device or through a social networking site and with the purpose to harass another, the person: . . .
>
> knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his person.

NJ Stat. § 2C:33-4.1(a)(2). Cyber harassment is an "indictable offense," the term New Jersey law uses to describe a felony.

28. Under New Jersey law, a law enforcement officer, such as Defendant Rempusheski, has authority to charge a person with a crime through a "complaint-warrant" or a "complaint-summons." N.J. Crim. R. 3:3-1(a)-(b). Complaint-warrants, which result in the physical arrest of the accused, are generally reserved for violent crimes, and a judicial officer must make a finding of probable cause before the complaint-warrant issues. N.J. Crim. R. 3:3-1(a)(1), (e)-(f). By contrast, a law enforcement officer need not obtain an

independent judicial finding of probable cause (or any other approval) to issue a complaint-summons directing the accused to appear in court on a future date. N.J. Crim. R. 3:3-1(b).

29. Once a law enforcement officer issues a complaint-summons charging an individual with a crime, the complaint-summons is entered into a database and an arraignment date is set. On the arraignment date, the accused is processed—for example, a mug shot and fingerprints are taken—as they would be in the case of a physical arrest under a complaint-warrant. The issuance of a complaint-summons also triggers the involvement of a prosecutor, who must decide whether, in the case of a felony charge, to seek an indictment from a grand jury, to downgrade the charge to a "disorderly persons offense" (New Jersey's term for a misdemeanor), or to dismiss the charges entirely.

30. Defendant Rempusheski charged Mr. Alfaro and Ms. Sziszak by complaint-summonses.

31. Nothing in either complaint-summonses or in the accompanying affidavits of probable cause supported Defendant Rempusheski's certification under penalty of perjury that Mr. Alfaro and Ms. Sziszak committed cyber harassment, that is, that they posted "lewd, indecent, or obscene" material with intent to harm, or place in fear of harm, a reasonable person.

32. The documents merely alleged that Detective Sandomenico (whose identity had remained unknown to Plaintiffs until then) was on duty at the time the photo was taken; that the officer was (for unexplained reasons) fearful that "harm [would] come to himself, family and property" because of the tweet; the text of the tweet; and that Mr. Alfaro and Ms. Sziszak were the individuals who posted the tweet.[3]

33. In addition to Mr. Alfaro and Ms. Sziszak, Defendant Rempusheski issued criminal complaint-summonses against three other individuals—including one he knew had graduated from high school earlier that year—who had retweeted Mr. Alfaro's post, charging them with felony cyber harassment.[4]

34. The complaint-summonses and affidavits of probable cause contained no other factual allegations to support the charges against any of those individuals either.

35. Defendant Rempusheski's apparent decision to issue felony complaint-summonses against everyone he could identify who posted Mr. Alfaro's tweet—including a teenager he knew was fresh out of high school— without any further information or allegations regarding each individual's

---

[3] Copies of the complaint-summonses and affidavits of probable cause are attached here as Exhibit A, for Mr. Alfaro's, and Exhibit B, for Ms. Sziszak's.
[4] According to a news report, the only individual who retweeted Mr. Alfaro's post but was not charged could not be identified. *See* Davis, *supra*, note 1.

9

specific intent, demonstrates that he sought to punish anyone who had, in his view, criticized a fellow officer.

36. The felony charges against Mr. Alfaro and Ms. Sziszak were dismissed by a prosecutor on August 7, 2020, before their schedule arraignment dates.

### III. Defendant Rempusheski succeeds in stifling Mr. Alfaro's and Ms. Sziszak's speech and inflicting additional injuries on them

37. Defendant Rempusheski's filing of the criminal complaints had the predictable effect of chilling Mr. Alfaro's and Ms. Sziszak's speech as well as inflicting on them physical and emotional harms.

38. Until Defendant Rempusheski charged him with a felony, 2020 marked a year of increased civic engagement for Mr. Alfaro. He had been to multiple protests and demonstrations. Likewise, he had taken to social media to share his views on current events and engage in public debate.

39. The felony charge rendered Mr. Alfaro too fearful to continue exercising his First Amendment rights in the same way. He ceased going to protests entirely. He also made his Twitter account and Instagram account private, limiting the number of people who could see what he had to say.

40. Mr. Alfaro also suffered, and continues to suffer, severe emotional harms, including anxiety, feelings of shame, and difficulty sleeping,

among other harms, that have caused him to seek help from a medical professional.

41. Ms. Sziszak similarly suffered serious injuries stemming from the baseless charges Defendant Rempusheski made against her. Like Mr. Alfaro, she made her Twitter account—which served as her primary way of engaging in current events—private after being charged with a felony.

42. The stress from the felony charge also disrupted Ms. Sziszak's insulin levels and hindered her ability to manage her diabetes. She missed multiple days of work in her job as a pharmacy technician as a result. And she endured, and continues to endure, sleeplessness, anxiety, shame, and feelings of isolation, among other emotional harms.

43. Even after the charges against Mr. Alfaro and Ms. Sziszak were dismissed, the chill on their speech and their emotional injuries have persisted.

## CAUSES OF ACTION

### Count 1 – Violation of First Amendment Rights – 42 U.S.C. § 1983

44. Plaintiffs incorporate by reference the foregoing allegations.

45. Defendant Rempusheski issued felony complaint-summonses against Plaintiffs to retaliate against and punish them for exercising their First Amendment right to speak about a public official engaged in public duties.

46. Defendant Rempusheski acted with malice because Plaintiffs spoke about his coworker and, in his view, improperly criticized the police.

47. Defendant Rempusheski lacked probable cause to issue the criminal complaint-summonses and falsely certified that Plaintiffs posted lewd, indecent, or obscene material and had intent to cause harm.

48. Defendant Rempusheski's actions deprived Plaintiffs of their First Amendment rights and caused them severe emotional distress.

### Count 2 – Violation of First Amendment Rights – N.J.S. § 10:6-2

49. Plaintiffs incorporate by reference the foregoing allegations.

50. Defendant Rempusheski issued felony complaint-summonses against Plaintiffs to retaliate against and punish them for exercising their First Amendment right to speak about a public official engaged in public duties.

51. Defendant Rempusheski acted with malice because Plaintiffs spoke about his coworker and, in his view, improperly criticized the police.

52. Defendant Rempusheski lacked probable cause to issue the criminal complaint-summonses and falsely certified that Plaintiffs posted lewd, indecent, or obscene material and had intent to cause harm.

53. Defendant Rempusheski's actions interfered with and attempted to interfere with Plaintiffs' exercise of their First Amendment rights and caused them severe emotional distress.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court:

A. Award Plaintiffs compensatory damages in an amount to be determined at trial;

B. Award Plaintiffs punitive damages in an amount to be determined at trial;

C. Award Plaintiffs their reasonable attorneys' fees and costs; and

D. Grant such other appropriate relief as may be just and proper.

Dated: February 10, 2021   Respectfully submitted,

/s/ *Alan G. Peyrouton*
Alan G. Peyrouton
Peyrouton Law
200 Passaic St.
Hackensack, NJ 07601
(Office) 201-766-4800
Fax 201-345-3789
alan@peyroutonlaw.com

Robert D. Friedman*
Nicolas Y. Riley*
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
rdf34@georgetown.edu
nr537@georgetown.edu

*Motion for admission pro hac vice forthcoming

13