UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT JUDGE** | **MARTIN LUTHER KING COURTHOUSE**<br>**50 WALNUT ST. ROOM 4066**<br>**NEWARK, NJ 07101**<br>**973-297-4903** |

December 10, 2021

VIA ECF

**LETTER ORDER**

  Re: Alfaro et al. v. Rempusheski
     Civil Action No. 21-02271

Dear Litigants:

  Before the Court is Defendant Michael Rempusheski's ("Defendant") Motion to Dismiss the Amended Complaint, ECF No. 12. Plaintiffs Kevin Alfaro ("Alfaro") and Georgana Sziszak ("Sziszak" and together with Alfaro, "Plaintiffs") oppose the Motion. ECF No. 19. For the reasons set forth below, Defendant's Motion is **DENIED**.

**I. BACKGROUND**[1]

  This matter arises out of Plaintiffs' claims of First Amendment retaliation and malicious prosecution following Alfaro's social media post about a Nutley police officer. See generally Am. Compl.

  On June 26, 2020, Alfaro attended a rally in Nutley, New Jersey to protest inequality and injustice in police practices. Am. Compl. ¶ 14. The Complaint alleges that when the march stopped in front of Nutley Town Hall, counter-protesters directed verbal taunts and threats at Alfaro and other protesters, including that they were going to "F[---] [them] up." Id. ¶¶ 15-16. Alfaro alleges that no violence erupted, but that he was frustrated that a nearby police officer—later identified as Detective Sandomenico ("Det. Sandomenico") of the Nutley Police Department ("NPD")—took no action following the physical threats and appeared instead to befriend the counter-protesters. Id. ¶ 17. Det. Sandomenico allegedly covered his badge so that Alfaro could not identify him, so Alfaro took a photograph of the officer. Id.

  Later that same evening, Alfaro posted the picture of Det. Sandomenico on Twitter with the caption, "If anyone knows who this bitch is throw his info under this tweet." Id. ¶ 18. The Complaint alleges that Alfaro's Twitter contained no surrounding posts that threatened police officers and that no Nutley Police officers followed him on Twitter. Id. ¶ 19. Five people,

---

[1] The following facts are drawn from the Amended Complaint, ECF No. 8 ("Am. Compl.").

including Sziszak, retweeted Alfaro's post. Id. ¶¶ 20-21. Sziszak did not add additional commentary to the tweet, did not have any followers in the NPD, and allegedly had no other posts that could be construed as threatening Det. Sandomenico or other police officers. Id. ¶¶ 21-23. Plaintiffs never received any response to their tweets with identifying information about Det. Sandomenico and they are not aware how the post eventually reached Defendant or Det. Sandomenico. Id. ¶¶ 19, 25.

On July 20, 2020, Defendant—a detective in the NPD and coworker of Det. Sandomenico—issued criminal complaint-summonses to Alfaro, Sziszak, and three other individuals who retweeted Alfaro's tweet, charging them with cyber-harassment. Id. ¶¶ 3, 26, 30. The complaint-summonses alleged that, in violation of N.J.S.A. § 2C:33-4.1(a)(2),[2] Alfaro's tweet depicted "a photo of Detective Sandomenico on 06/26/20 acting in the performance of his duties at a protest which took place in front of Nutley Police Headquarters," the tweet stated that "if anyone knows who this bitch is throw his info under this tweet," and that the tweet caused Det. Sand[o]menico to fear that harm will come to himself, family and property." ECF No. 12.1, Exs. C, E. The accompanying Affidavits of Probable Cause[3] indicated how the officers determined the Twitter accounts belonged to Alfaro and Sziszak, noted that "Det. Sandomenico stated that Mr. Alfaro's twitter post created fear for himself and his family," and detailed that "Det. Sandomenico feels that Mr. Alfaro's post was meant to cause harm to himself, his family and property." ECF No. 12.1, Exs. D, F.

On August 7, 2020, a prosecutor dismissed the felony charges against Plaintiffs prior to their arraignment dates. Id. ¶ 36. The Complaint alleges that the criminal summonses nonetheless had the "predictable effect of chilling" Plaintiffs' speech and inflicted physical and emotional harms on both Plaintiffs. Id. ¶ 37. The Complaint alleges that Alfaro remained fearful to exercise his First Amendment rights in the same way as before: he stopped going to protests, he made his social media accounts private, he cut back on online activity out of fear of retaliation, he suffered from anxiety, feelings of shame, and difficult sleeping, and he sought medical help. Id. ¶¶ 7, 39-40. Sziszak similarly alleged that she suffered from the charges: she made her Twitter account private, she cut back on online activity out of fear of retaliation, she endured sleeplessness, anxiety, shame, and feelings of isolation, and the stress hindered her ability to manage her diabetes. Id. ¶¶ 7, 41-42.

Plaintiffs initiated this action on February 10, 2021, ECF No. 1, and filed the three-count Amended Complaint on March 18, 2021, ECF No. 8. Plaintiffs assert claims (1) under 42 U.S.C. § 1983 ("Section 1983") for violations of their First Amendment Rights, Am. Compl. ¶¶ 44-48

---

[2] The cyber-harassment statute, in relevant part, provides that "[a] person commits the crime of cyber-harassment if, while making a communication in an online capacity via any electronic device or through a social networking site and with the purpose to harass another, the person" "knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his person." N.J.S.A. § 2C:33-4.1(a)(2).

[3] Plaintiffs incorporate the complaint-summonses and affidavits of probable cause into the Complaint, but inadvertently failed to attach them to the filing. Pl. Opp. at 5 n.2, ECF No. 18. Plaintiffs emailed the exhibits directly to defense counsel and both exhibits are attached to the Motion to Dismiss. ECF No. 12.1, Exs. C-F.

("Count One"); (2) under the New Jersey Civil Rights Act, N.J.S.A. § 10:6-1 et seq., (the "NJCRA") for violations of their First Amendment rights, id. ¶¶ 49-53 ("Count Two"), and (3) for common-law malicious prosecution ("Count Three"), id. ¶¶ 54-56.  Defendant moves to dismiss all three claims.  ECF No. 12.

## II. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  Id.  The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

### A. Constitutional Claims under Section 1983 and the NJCRA

Defendant argues that Plaintiffs have failed to state a claim under Section 1983 and the NJCRA for First Amendment retaliation.  He further asserts that he is entitled to qualified immunity on Plaintiffs' First Amendment claims.

To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law.  See Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 609 (3d Cir. 2011).  A plaintiff must establish which rights or privileges have been infringed upon by the defendants' actions.  Albright v. Oliver, 510 U.S. 266, 271 (1994).  Here, Plaintiffs assert a violation of their First Amendment rights.

New Jersey courts also analyze a plaintiff's NJCRA claims through the lens of Section 1983.  Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 444 (D.N.J. 2011); see also Chapman v. New Jersey, No. 08-4130, 2009 WL 2634888, *3 (D.N.J. August 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983.").  The Court therefore addresses Plaintiffs' Section 1983 and NJCRA claims in tandem.

#### 1. First Amendment Retaliation

Defendant argues that Plaintiffs were not deprived of any right protected by the First Amendment because probable cause existed under the cyber-harassment statute to issue the complaint-summonses.  The Court disagrees.

To plead a First Amendment retaliation claim, a plaintiff must allege (1) that he or she engaged in constitutionally protected conduct; (2) that the defendant took action sufficient to deter

3

an ordinary person from engaging in such conduct; and (3) a causal connection between the two. Jacobs v. City of Phila., 836 F. App'x 120, 121 (3d Cir. 2020).

### a. Constitutionally Protected Conduct

Defendant argues that if probable cause existed to arrest Plaintiffs for criminal conduct, they cannot maintain their claims that they were instead arrested for protected speech. Def. Mem. at 9 (citing Whaley v. Borough of Collingswood, No. 10-4343, 2012 WL 2340308 at *13 (D.N.J. June 18, 2012)). However, Defendant does not dispute that Plaintiffs have a First Amendment right to photograph, gather information about, or publicly criticize a police officer.

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." City of Houston, Tex. v. Hill, 482 U.S. 451, 461 (1987). Even speech that is "provocative and challenging" is "protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." Id. (citation omitted); see also Johnson v. Campbell, 332 F.3d 199, 212 (3d Cir. 2003) (stating that the First Amendment protects speech that is "unpleasant, disputatious, or downright offensive"). "[U]nder the First Amendment's right of access to information the public has the commensurate right to record—photograph, film, or audio record—police officers conducting official police activity in public areas." Fields v. City of Phila., 862 F.3d 353, 360 (3d Cir. 2017).

Plaintiffs have adequately alleged that they engaged in constitutionally protected conduct by taking a photograph of Det. Sandomenico and posting it on social media in an attempt to find identifying information about him, even if that post contained profane language.

### b. Action Sufficient to Deter an Ordinary Person

Defendant argues that Plaintiffs fail to show the alleged retaliatory act would deter an ordinary person from exercising their First Amendment rights. The Court disagrees.

The Court is satisfied that (1) being charged with a felony for engaging in protected activity could deter an ordinary person from exercising those rights and (2) Plaintiffs have adequately pled that the felony charges brought against them had a chilling effect on their protected speech. See, e.g., Am. Compl. ¶¶ 39, 41.

### c. Causal Connection

Defendant next argues that the Amended Complaint fails to plead any facts that the complaint-summonses were issued in an attempt to retaliate against or punish Plaintiffs and thus it fails to establish a causal link. Def. Mem. at 10. The Court finds this argument unavailing.

When alleged retaliation takes the form of criminal charges, "causation requires a showing that the charges were not supported by probable cause." Jacobs, 836 F. App'x at 121. "Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution." Hartman v. Moore, 547 U.S. 250, 261 (2006). "Probable cause exists where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably

trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." State v. O'Neal, 190 N.J. 601, 612 (2007).

Here, Defendant charged Plaintiffs with cyber-harassment pursuant to N.J.S.A § 2C:33-4.1(a)(2), a violation of which requires a person to knowingly send, post, comment, request, suggest, or propose "any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his person." (emphases added).

First, Defendant cannot demonstrate that Alfaro's tweet contained "lewd, indecent, or obscene material," as required under N.J.S.A. § 2C:33-4.1(a)(2). The tweet states only: "If anyone knows who this bitch is throw his info under the tweet." While the use of the word "bitch" may be considered derogatory or insulting, it falls short of meeting the statutory requirement.

Two recent cases are instructive. In State v. Carroll, the court held that the State lacked probable cause to arrest a defendant on cyber-harassment charges under the same statute. 456 N.J. Super. 520, 535 (App. Div. 2018). The posts at issue included a photo of police officers, as well as overtly threatening language, including "BOY YOU A FUCKING RAT! ! ! hope somebody blow them glasses tf (the fuck) off his face." Id. at 529. The court found that even where the series of Facebook posts "were indisputably coarse and insulting," they were not "indecent" for purposes of the statute because the language was not associated with "nudity or sexuality." Id. at 535. Similarly, the Third Circuit stated that "[l]ewd,' 'indecent,' and 'obscene,' could collectively be interpreted to prohibit only speech that is unprotected by the First Amendment under the Miller obscenity test." McCauley v. Univ. of the V.I., 618 F.3d 232, 253 (3d Cir. 2010) (citing Miller v. California, 413 U.S. 15, 25 (1973) (obscenity relates to works that (a) depict sexual conduct that is patently offensive; (b) appeal to the prurient interest; and (c) lack serious literary, artistic, political, or scientific value)). Here, no reasonable officer could conclude that she had probable cause to charge plaintiffs under the statute for tweeting "lewd, indecent or obscene material."[4]

Second, even if Alfaro's language was classified as "lewd, indecent, or obscene," no reasonable officer could conclude, based on the allegations in the Complaint, that Alfaro's tweet was posted with an intent to harm Det. Sandomenico or place him in reasonable fear of physical or emotional harm. Plaintiffs allege that no officers from the NPD followed them on Twitter and thus they are unsure how the NPD ever saw the tweet at issue. Am. Compl. ¶¶ 19, 22. They allege that their Twitter pages were devoid of anything suggesting that the tweet was intended as a threat or calling for violence. Id. Instead, they allege that the legitimate purpose for the tweet was to determine the officer's name so Alfaro could file a complaint about his behavior at the rally,

---

[4] The New Jersey Criminal Code defines "lewd acts" as "exposing of the genitals for the purpose of arousing or gratifying the sexual desire of the actor or of any other person," N.J.S.A. § 2C:14-4(c) and "obscene material" as "any description, narrative account, display, depiction of a specified anatomical area or specified sexual activity contained in, or consisting of, a picture or other representation, publication, sound recording, live performance or film, which by means of posing, composition, format or animated sensual details, emits sensuality with sufficient impact to concentrate prurient interest on the area or activity," N.J.S.A. § 2C:34-3(a)(1).

5

primarily for shielding his identity from the public. Id. ¶ 2. Absent additional facts, no reasonable police officer could have construed the tweets in a way that showed the requisite intent to harm or place Det. Sandomenico in fear.

Consequently, Plaintiffs have plausibly alleged the absence of probable cause for the cyber-harassment charges against them.[5] They have thus sufficiently pled a causal connection between the constitutionally protected conduct and Defendant's action and stated viable claims of First Amendment retaliation.

### 2. Qualified Immunity

Defendant further argues that even if there was not probable cause to charge Plaintiffs, there has been no violation of any clearly established right since he acted at the direction of the assistant prosecutor. See Rep. Br. at 8, ECF No. 25. The Court disagrees.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Thus, a court must ask: "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation." Id. The affirmative defense of qualified immunity also applies to NJCRA claims and "tracks the federal standard, shielding from liability all public officials except those who are plainly incompetent or those who knowingly violate the law." Brown v. State, 230 N.J. 84, 98 (2017).

Because Plaintiffs have alleged that Defendant acted without probable cause when he charged Plaintiffs with cyber-harassment under N.J.S.A. § 2C:33-4.1(a)(2) and violated their First Amendment rights, see supra, A.1.c., the only remaining inquiry is whether the law was clearly established when Defendant allegedly charged Plaintiffs without probable cause.[6]

---

[5] Defendant argues that he reasonably relied on the prosecutor's advice to charge Plaintiffs and thus reasonably believed there was probable cause to charge them with cyber-harassment. Def. Mem. at 13-14. He relies on his investigative report, which is the only document in the record stating that the detectives consulted the prosecutor prior to charging Plaintiffs and she approved the cyber-harassment charges. ECF 12.1, Ex. G. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). A court may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id. At this stage, the Court finds that it would be improper to consider the investigative report. This is a fact issue that can be explored in discovery. The Court will not consider Defendant's alleged reliance on the prosecutor's advice for purposes of probable cause at this early stage.

[6] Defendant argues that he relied on the prosecutor's advice to charge Plaintiffs with cyber-harassment and is thus afforded a presumption of qualified immunity based on the Third Circuit's discussion in Kelly. The Kelly court held that "a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause." 622 F.3d at 255-56. "That reliance must itself be objectively reasonable, however," and a plaintiff may rebut the presumption "by showing that, under all the factual and legal circumstances surrounding the arrest, a reasonable officer would not have relied on the prosecutor's advice." Id. at 256. As discussed, the Court declines to consider the

A right is clearly established if it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). "'[C]learly established law should not be defined at a high level of generality,' but must instead 'be particularized to the facts of the case.'" Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018) (quoting White v. Pauly, 137 S. Ct. 548, 552 (2017)). However, to determine whether the constitutional right was "clearly established" at the time of the misconduct, "it is not necessary that there have been a previous precedent directly in point." Good v. Dauphin Cty. Soc. Servs. for Children & Youth, 891 F.2d 1087, 1092 (3d Cir. 1989). "The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." Id.

Here, the Court first finds that interpretation of New Jersey's cyber-harassment statute is clearly established. As discussed above, the Third Circuit and New Jersey Appellate Division have both explicitly weighed in on the "lewd, indecent, and obscene" standard and have found that, for purposes of N.J.S.A. § 2C:33-4.1(a)(2), the language and online material must contain some level of nudity, sexuality, patently offensive sexual conduct, or appeals to the "prurient interest." See McCauley, 618 F.3d at 253; Carroll, 456 N.J. Super. at 535. The Court is thus satisfied that the law surrounding the cyber-harassment statute is clearly established, that it would have been clear to a reasonable officer that Alfaro's language did not meet the requirements of the statute, and that Defendant had sufficient reason to know that he lacked probable cause to charge Plaintiffs.

The law is also clearly established that "institution of criminal action to penalize the exercise of one's First Amendment rights is a deprivation cognizable under § 1983." Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 907-08 (3d Cir. 1984). In Losch, a man alleged that officers charged him with criminal harassment without probable cause because he taped a note complaining about a police officer to the front door of the police station. Id. at 906. In denying the officers qualified immunity, the Third Circuit noted that "[t]he Supreme Court has clearly held that prosecution of a citizen in retaliation 'for nonprovocatively voicing his objection' to police conduct impermissibly punishes constitutionally protected speech." Id. at 910 (quoting Norwell v. City of Cincinnati, 414 U.S. 14, 16 (1973)). The law protecting the plaintiff in Losch "from police officers' use of their official position to launch a private vendetta was clearly established and not uncertain." Id.; see also Catalano v. City of Trenton, No. 18-11646, 2019 WL 2315092, at *11 (D.N.J. May 31, 2019) ("[T]here is no doubt that effectuating an arrest without probable cause, and arresting an individual for exercising his first amendment rights to file a citizen's complaint are violations of clearly established rights.").

The same applies here. Plaintiffs have adequately alleged that Defendant charged them without probable cause and in retaliation for exercising their First Amendment rights. The law is clearly established such that Defendant was on notice of the impropriety of his actions. Thus, qualified immunity does not shield Defendant at this stage of the litigation.

---

investigative report and Defendant's alleged reliance on the prosecutor's advice at this stage in the litigation.

### B. Malicious Prosecution Claim

Defendant last argues that Plaintiffs have failed to establish the elements of common-law malicious prosecution. ECF No. 26. The Court disagrees.

To state a claim for malicious prosecution under New Jersey law, Plaintiffs must allege "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 394 (2009). "[M]alice in the law is the intentional doing of a wrongful act without just cause or excuse." Id. at 395 (internal citations omitted). The elements for malicious prosecution are not of equal weight; "[i]t is understood that the essence of the cause of action is lack of probable cause." Id. (internal citations omitted).

Here, Defendant issued the complaint-summonses charging Plaintiffs with cyber-harassment and those charges were dismissed by the prosecutor in August 2020. Am. Compl. ¶¶ 26, 36. Therefore, the first and fourth elements are clearly met. The Court has also already determined that Plaintiffs have alleged an absence of probable cause for the proceeding. Finally, the Court finds that Plaintiffs have adequately pled that the criminal action was motivated by malice, completing their claim for malicious prosecution.[7]

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is **DENIED**.

**SO ORDERED**.

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[7] Plaintiffs assert that Defendant issued the felony complaint-summonses "with malice, as demonstrated by his retaliatory motive," and "against several people who posted Mr. Alfaro's tweet, including a teenager he knew was fresh out of high school—without further information or allegations regarding each individual's specific intent", demonstrating that "he sought to punish anyone who had, in his view, criticized a fellow officer." Am. Compl. ¶¶ 35, 55.